IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ZACKERY T. BROWN and
LORETTA COLE                                                                                      PLAINTIFFS

V.                                  NO.  2:07-CV-02006-RTD

ASSOCIATES' HEALTH AND WELFARE
TRUST and WAL-MART STORES, INC.                                                DEFENDANTS

REPORT AND RECOMMENDATION

Before the court is the Defendants' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 25) and Brief (Doc.26) filed July 11, 2007.  The Plaintiff filed their Responses (Doc.28 and 29) on July 13, 2007 and the Defendants filed a Reply (Doc. 30) on July 16, 2007.  The parties appeared before the court for a hearing on the Motion on July 18, 2007 where no evidence was presented but argument was made by the parties.

## Background

At all times relevant herein, Plaintiff Loretta Cole ("Cole") was an employee of Wal-Mart Stores, Inc. and elected coverage for herself and her dependents under the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (the "Plan"), and Plaintiff Zackery T. Brown ("Brown") was a "Covered Person" under the terms of the Plan, which is self-funded and covered by ERISA. (Plaintiffs' Complaint, ¶ VII, Doc. No. 1; Affidavit of Teresa Todd, Exhibit A to Defendants' Statement of Material Facts, ¶¶ 4 – 6, Doc. No. 12 (hereinafter referred to as "Affidavit of Teresa Todd.") The Plan paid a total of $63,465.83 in medical benefits on behalf of Brown because of injuries he sustained in an automobile accident on July 18, 2006. (Affidavit of Teresa Todd, ¶¶ 7, 8.) Brown sought to recover from the parties who caused his injuries, as well as from an underinsured motorist policy, and settled claims relating to the July 18, 2006 accident

for $55,000.00. (Plaintiffs' Complaint, Doc. No. 1, ¶¶ VIII 5, 6, 10, 12; Affidavit of Teresa Todd at ¶ 9.)

The Plan contains a "Reimbursement/Subrogation" provision, which provides for first priority reimbursement from monies recovered on behalf of beneficiaries for whom the Plan pays benefits. (Affidavit of Teresa Todd at ¶ 10.) The Plan has requested that Plaintiffs abide by the terms of the Plan, but they have refused to do so. (Id. at ¶ 11.) Plaintiffs placed $50,000.00 of the settlement proceeds ("disputed funds") in the Stephen M. Sharum Arkansas IOLTA account at Regions Bank. (Plaintiffs' Complaint, ¶ VIII 10, Doc. No. 1); Affidavit of Teresa Todd at ¶ 12.)

The Plaintiff, Zackery T. Brown, sustained personal injuries in the motor vehicle collision of July 18, 2006 in which he was a passenger in a one-vehicle collision. Zackery T. Brown settled his personal injury claim, first with Shelter Insurance Company under an underinsured motorist provision of his stepfather's insurance policy on September 22, 2006 for $25,000.00 and second with State Farm insurance Company for his liability claim on October 4, 2006 for $25,000.00. These facts are confirmed in the Affidavits of Loretta Cole, Zackery T. Brown, and Stephen M. Sharum, Exhibits A, B and C to the Plaintiffs' Memorandum Brief in Support of Motion for Summary Judgment. (DOC 17) The settlement of the personal injury claim of Zackery T. Brown is memorialized in the Settlement Agreement dated October 12, 2006. (DOC 17, Exhibit A, Affidavit of Loretta Cole, Affidavit Exhibit 7) The attorney's fee in the amount of $17,000.00 was pursuant to an Attorney-Client Agreement between Zackery T. Brown and his attorney signed by Zackery T. Brown on August 7, 2006. (DOC 17, Exhibit A, Affidavit of Loretta Cole, Affidavit Exhibit 4; Exhibit B, Affidavit of Zackery T. Brown, ¶ 6) Zackery T. Brown received $5,000.00 from the medical payments coverage of the State Farm liability policy

on October 17, 2006. (DOC 1, Complaint ¶ 12) The notice of subrogation by the Defendants' was received by the Plaintiffs **after** the settlement of the personal injury claims of Zackery T. Brown. (DOC 17, Exhibit C, Affidavit of Stephen M. Sharum, ¶ 7)

The underlying issue, in summary, is whether the Defendant's claim for reimbursement under ERISA will preempt Mr. Sharum's claim for attorney's fees pursuant to an attorney-client contract.

Plaintiffs filed this action against Defendants on January 24, 2007 seeking declaratory relief as to the $50,000.00 recovery. (Plaintiffs' Complaint, Doc. No. 1.) Defendants filed a counterclaim against Plaintiffs on March 1, 2007 seeking equitable relief pursuant to 29 U.S.C. § 1132(a)(3). (Defendants' Answer and Counterclaim, Doc. No. 5.)

## Discussion

Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Systems, Inc. v. C L Systems, Inc. 640 F.2d 109, *113 (C.A.Mo., 1981)

In this particular case there does not seem to be any issue as to the second and forth elements of the test and the court will not address those issues. The court will also assume that there is some probability that the Defendant may succeed on the merits. See Waller v. Hormel Foods Corp., 120 F.3d 138 (8th Cir. 1997); Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Scott, 27 F. Supp. 2d 1166 (W.D. AR, 1998)

In the court's mind the issue revolves around whether the Defendants' would incur irreparable harm if the court refused to grant the TRO or the Preliminary Injunction. It does not

seem that the Defendants could suffer "irreparable" harm.  Mr. Sharum is a respected member of the legal community with a long standing practice, and substantial ties to the community, both economic and familial.  The Defendant cannot seriously contend that, should the court rule in its favor on the merits, that it has no recourse against the Plaintiffs or Mr. Sharum.

The Defendants' contention is that it should not have to show "irreparable" harm but just harm since they are seeking action under ERISA and the Defendants cite *Burlington Northern Railroad Company v. Blair*, 957 F.2d 599 (8th Cir. 1992)

In the Burlington case the railroad filed a complaint against Iowa Director of the Department of Revenue seeking permanent injunction pursuant to Railroad Revitalization and Regulatory Reform Act. The action was brought under Section 306 which stated in pertinent part that "the district courts of the United States shall have jurisdiction, without regard to the amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section, except that ... no relief may be granted under this section unless the ratio of assessed value to true market value, with respect to transportation property, exceeds by at least 5 per centum the ratio of assessed value to true market value, with respect to all other commercial and industrial property in the same assessment jurisdiction."

"In deciding whether to grant the preliminary injunction, the district court made two important rulings. First, the court ruled that a "reasonable cause" standard, as opposed to traditional equitable principles governed the issuance of injunctions under section 306. The district court followed the Tenth Circuit's opinion in Atchison, T. & S.F. Ry. v. Lennen, 640 F.2d 255, 260 (10th Cir.1981). Under the reasonable cause standard, the district court does not balance

the equities between the parties, but, instead, simply determines whether reasonable cause exists to believe that a violation of the act has occurred... The district court concluded that under the reasonable cause standard, an injunction should issue if facts exist which reasonably could support the movant's position, even if those facts are in dispute." *Burlington Northern R. Co. v. Bair* 957 F.2d 599, *601 (C.A.8 (Iowa),1992)

The Defendant contends that since Congress gave the right to a "participant, beneficiary, or fiduciary, to enjoin any act or practice which violates any provision of subchapter or the terms of the plan" (29 U.S.C. section 1132 (a) (3) (A)), that the court should apply the "reasonable cause" test as espoused in Burlington.

The 8th Circuit refused to follow that logic in applying the language in the National Labor Relations Act when it stated that "[T]he Dataphase factors are not a rigid formula. The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The exercise of equitable discretion under § 10(j) must further Congress's remedial purpose in authorizing preliminary injunctions against suspected statutory violations." *Sharp v. Parents in Community Action, Inc*. 172 F.3d 1034, *1038 (C.A.8 (Minn.),1999)

The 6th Circuit also refused to apply the "reasonable cause standard" in U.S. v. Miami University, 249 F.3d 797, C.A.6 (Ohio), 2002, drawing the distinction between the ability of a party to "take any action" as opposed to a specific mandate from Congress authorizing the courts to enjoin a violation of the legislative act.  The court in U.S. v. Miami stated that "When a recipient of funds fails to comply with the FERPA, Congress permits the Secretary of Education to "take any ... action authorized by law with respect to the recipient." 20 U.S.C. § 1234c(a)(4). While this provision certainly permits the DOE to bring a cause of action, including, inter alia, an

action for injunctive relief, it does not expressly authorize the granting of injunctive relief to halt or prevent a violation of the FERPA. Cf. CSX Transportation, Inc., 964 F.2d at 551. Given the assortment of remedies available in the FERPA, Congress by no means foreclosed the exercise of equitable discretion. Compare Weinberger, 456 U.S. at 311-320, 102 S.Ct. 1798 (providing a thorough discussion of instances when courts should and should not balance equitable considerations) with United States v. Szoka, 260 F.3d 516, 523-24 (6th Cir.2001)(discussing a statute in which Congress foreclosed the exercise of equitable discretion). Accordingly, the "reasonable cause" standard enunciated in CSX does not apply to the instant case and we must embrace our traditional role in equity." *U.S. v. Miami University* 294 F.3d 797, *817 (C.A.6 (Ohio),2002)

It does not appear to the court that authorizing one to pursue injunctive relief is the same as shifting the theory of that relief from the traditional standard of "irreparable" harm to "reasonable cause" to believe the statute has been violated.  The proper test in this case is whether the Defendant will suffer irreparable harm and it does not appear that the Defendant has shown that it will suffer such harm.

## CONCLUSION

I therefore recommend that the motion for the Temporary Restraining Order and Preliminary Injunction be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th day of July 2007.

                            /s/ *J. Marschewski*
                            HON. JAMES R. MARSCHEWSKI
                            UNITED STATES MAGISTRATE JUDGE