IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ZACHERY T. BROWN and
LORETTA COLE                                                                                    PLAINTIFFS

v.                                              Case No. 07-2006

ASSOCIATES HEALTH AND WELFARE PLAN
and WAL-MART STORES, INC.                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Complaint requesting the Court to find that Zachery Brown was not made whole as a result of the settlement of the personal injury claim. He contends that because the Defendants's Plan does not specifically reject the make whole doctrine[1], Plaintiffs should be entitled to retain the full amount of the settlement received. Plaintiffs request if the Court concludes the Plan rejects the make whole doctrine, the Court shall then determine that the subrogation rights of the Plan do not extend to the Plaintiffs' attorney's fees and costs. Further, Plaintiffs ask this Court to find that Wal-Mart is not entitled to enforce a wage deduction from Plaintiff's wages. Defendants filed a counterclaim against Plaintiffs seeking equitable relief pursuant to 20 U.S.C. § 1132(a)(3). (Doc. 5).

Currently pending before this Court are the Defendants' Motion for Summary Judgment

---

[1] Under the make whole or made whole doctrine "an insured's right to be made whole takes precedence over an insurer's right to subrogation; the insured must be wholly compensated before an insurer's right to subrogation arises. Therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred; equity requires that an insured be made whole before the insurer's right to subrogation arises." *Logan County v. McDonald*, 90 Ark.App. 409, 206 S.W.3d 258 (Ark. App. 2005).

1

(Doc. 11-1) and supporting documents (Docs. 11-2, 12-1 and 39-1) and Plaintiffs' Response to Defendants' Motion for Summary Judgment.  Plaintiffs' Motion for Summary Judgment (Doc.16) and supporting documents (Docs. 17-1 and 18) and Defendants' Response to Plaintiffs' Motion for Summary Judgment (Doc. 39-1).  Also pending is Plaintiffs' Motion to Dismiss Counter-Claim against Separate Counter-Defendant Stephen Sharum (Doc. 31) and supporting document (Doc. 32) and Defendants' Response to Motion to Dismiss Counter-Claim (Doc. 40) and supporting document (Doc. 41).

For the reasons stated herein, the Plaintiffs' Motion for Summary Judgment is DENIED and the Defendants' Motion for Summary Judgment is GRANTED.  Plaintiffs' Motion to Dismiss Counter-Claim is DENIED as it is moot.

**Background**

On July 18, 2006, Plaintiff Zachery Brown was injured in an automobile accident. Due to the severity of his injuries, Zachery was hospitalized in an intensive care unit for eleven days and remained in the hospital an additional three days.  (Doc. 1-1).  Plaintiff's mother Loretta Cole is a participant in the Associates's Health and Welfare Plan ("Plan") as an employee of Wal-Mart Stores, Inc.  At the time of the accident, Zachery was covered as a beneficiary under the plan as a dependent. (Doc. 1-1).  BlueAdvantage, the healthcare administrator for the group plan provided through the Associates' Health and Welfare Plan, paid $63,465.83 in medical expenses.  (Docs. 17-1 and 39).  The Plan, under which Plaintiffs received medical benefits, is self-funded and governed by the Employee Retirement Income Security Act (ERISA) 29 U.S.C. § 1001 *et seq*. (Doc. 1-1).  The Plan contains a "Reimbursement/Subrogation" provision, which provides for first priority reimbursement from monies recovered on behalf of beneficiaries for

whom the Plan pays benefits. (Doc. 1, Ex. A).

Plaintiffs hired attorney Stephen Sharum to represent them and recover from the parties who caused Zackery Brown's injuries. (Doc. 17). Pursuant to the Attorney-Client Agreement, Stephen Sharum was to receive thirty-four percent (34%) of all amounts recovered. (Doc. 21). Plaintiffs reached a settlement with Zachery's stepfather's insurance company Shelter Insurance Company for $25,000.00 on September 22, 2006 on the underinsured motorist coverage claim and settled with the liability insurer, State Farm Insurance Company, for $25,000.00 on October 4, 2006. On October 9, 2006, Plaintiff received a notice of subrogation claim from the health plan administrator. Plaintiff signed a release with the liability insurance carrier and the underinsured motorist carrier on October 12, 2006. Plaintiff's attorney, Steve Sharum, placed the proceeds of the two settlements, $50,000.00, in his IOLTA account on October 12, 2006.[2]

**Summary Judgment**

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56(c). A fact is material only when its resolution affects the outcome of the case. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence

---

[2] On July 10, 2007, Plaintiffs' attorney Stephen Sharum notified Defendants he had removed $17,000.00 of the settlement proceeds from his IOLTA account and placed it in his operating account. Defendants' filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 25) asking that Plaintiffs and their attorney, Stephen Sharum, be enjoined from disposing of any of the $50,000.00 settlement funds. The Magistrate heard this matter on July 18, 2007 and recommended the motion be denied. This Court entered an Order (Doc. 45) on August 13, 2007 adopting the Magistrates Report and Recommendation but found Defendants would suffer irreparable harm if the funds were dissipated and granted the preliminary injunction as to the entire $50,000.00 with the $17,000.00 to be returned to the IOLTA account.

is such that it could cause a reasonable jury to return a verdict for either party. See *id.* at 252. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc.* 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant party may not rely on mere denials of bare allegations, but must point to specific facts that raise a triable issue. See *Anderson*, 477 U.S. at 249. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See *Celotex Corp. v. Citrate*, 477 U.S. 317, 324 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Id.* at 327 (quoting from Fed.R.Civ.P. 1).

**Analysis**

In *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 92002), the Supreme Court distinguished between "legal" and "equitable" relief. The Court stated, "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. However, the Court reasoned, "if the property or its proceeds have been dissipated

so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." *Id* at 213-14. In such an instance, the plaintiff is seeking a legal remedy, the imposition of personal liability on the defendant to pay a sum of money which the plaintiff is owed, so his claim falls outside § 502(a)(3)'s jurisdictional grant. *Id* at 210.

Relying on the discussion in *Great-West*, courts have developed a three part test for determining whether a plan administrator can maintain an action for "appropriate equitable relief" to enforce a reimbursement provision after a plan beneficiary has received compensation from a third party. "Does the Plan seek to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the plan, and (3) that are within the possession and control of the defendant beneficiary?" *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wainsbrough*, 354 F.3d 348, 356 (5th Cir. 2003); *Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco*, 338 F.3d 680, 687 (7th Cir. 2003); *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005).

In *Sereboff v. Mid Atlantic Medical Services, Inc.*, —U.S. —, 126 S.Ct. 1869 (2006), an ERISA fiduciary brought suit against plan beneficiaries, seeking reimbursement under the plan's third-party reimbursement provision for amounts paid by the health insurance plan and subsequently recovered by the beneficiaries in their settlement with third-party tortfeasors. *Id.* at 1872-73. The beneficiaries argued that the fiduciary's claim for relief was not equitable and thus disallowed under ERISA. See *Id.* at 1873-77. The Supreme Court disagreed, holding that the fiduciary's action to enforce the third-party reimbursement provision "qualifie[d] as an equitable remedy because it [was] indistinguishable from an action to enforce an equitable lien

5

established by agreement." *Id.* at 1877. Key to its holding was the Supreme Court's determination that the third-party reimbursement provision "specifically identified a particular fund, distinct from the [beneficiaries'] general assets-all recoveries from a third party . . . -and a particular share of that fund to which [the fiduciary] was entitled-that portion of the total recovery which [was] due [the fiduciary] for benefits paid." *Id.* at 1875.

In determining whether Defendants are entitled to any of the settlement funds currently being held by Plaintiffs' attorney, the three part test set out above must be applied.

Defendants argue they are entitled to an equitable lien or constructive trust against the $50,000.00 currently being preserved in the Stephen M. Sharum IOLTA account. (Doc. 11-2). Defendants argue they are entitled to the equitable relief it seeks pursuant to *Sereboff v. Mid Atl. Med. Servs., Inc.*, 126 S.Ct. 1869 (2006) as the funds it seeks are specifically identifiable and in the possession of the Plaintiffs. Plaintiffs argue the funds do not in good conscience belong to the Plan, as the attorney fee funds do not meet any part of the three part test and all funds were appropriated prior to Defendants' notice of claim of lien or subrogation.

A. Specific Identifiability

In this case, the funds are specifically identifiable. In *Varco*, *supra*, the court held that where a defendant established a bank account from the settlement proceeds in the amount of the medical bills, the funds had not been dissipated and were specifically identifiable. *Id* at 684. In *Bombardier*, *supra*, the Court found that the funds were specifically identifiable when the settlement proceeds were placed in a trust account by the beneficiary's law firm. *Bombardier* at 350.

In this case, the funds have been placed in the attorney's Trust Account pending the

outcome of this action. These funds were obtained from Plaintiffs' settlement for injuries Zackery Brown sustained in the accident. Thus the proceeds of the settlement have not been dissipated and are specifically identifiable.

B. <u>The Plan's Rights to the Funds</u>

Defendants' claim to be entitled to the funds based upon the Plan's "Right to Reduction, Reimbursement and Subrogation" provision. This provision states, "[T]o the extent of any and all of the following payments: Any judgment, settlement, or payment made or to be made because of an accident or malpractice, including but not limited to other insurance . . . The Plan requires you, your dependents, and your representative to cooperate in order to guarantee reimbursement to the Plan from third party benefits." Defendants contend this language entitles it to the funds being held in the account.

Plaintiffs argue the funds do not in "good conscience" belong to the Plan as Defendants are precluded from claiming a constructive trust or equitable lien since Plaintiffs settled the case before notice of a claim was asserted by Defendants. Furthermore, Plaintiffs argue Zachery was not made whole by the settlement of his claims and therefore, the funds do not in good conscience belong to the Plan.

However, the Supreme Court has stated, "a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets title to the thing." *Sereboff*, 126 S.Ct. At 1877 (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914). Plaintiffs agreed to reimburse the Plan if it paid out funds to them and they were able to recover from a third party. Therefore, the actual settlement date is not relevant as Plaintiffs had prior notice they would be required to reimburse the Plan if they recovered funds from a third party as

AO72A
(Rev. 8/82)

reimbursement for injuries for which the Plan paid out benefits. Further, the funds the Plan is seeking to recover belong to Plaintiffs and are being held in an account in the name of their attorney who is unquestionably their agent.

In support of their argument that the Plan does not reject the federal make whole doctrine, Plaintiffs cite the case of *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997) which found the make whole doctrine operates as a default rule. The Eleventh Circuit stated, "As a default rule, the make whole doctrine applies to limit a plan's subrogation rights where an insured has not received compensation for his total loss and the plan does not explicitly preclude operation of the doctrine." *Id* at 1522. Because the make whole doctrine is a default rule, the parties can contract out of the doctrine." *Id* citing *Barnes v. Independent Auto. Dealers Ass'n of Calif. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 (9th Cir. 1995). The Eighth Circuit has held that "[a] subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan." *Waller v. Hormel Foods Corp.,* 120 F.3d 138, 140 (8th Cir. 1997). The Court has also noted that the "Make-whole rule is a rule of interpretation that functions as a default rule to be applied only when the plan is ambiguous." *Id.* citing *Cagle v. Bruner*, 112 F.3d 1510, 1521 (11th Cir. 1997).

The Eighth Circuit has allowed ERISA plans to disclaim the make whole doctrine. "It is settled that ERISA plan participants have an obligation to reimburse the plan when a recovery is made from a third party responsible for the injuries and the plan terms require reimbursement. *Waller,* at 140. The Plan language states, "The Plan has a right to: Recover or subrogate 100% of benefits paid, or to be paid, by the Plan for covered persons, to the extent of any and all of the following payments: Any judgment, settlement, or payment made or to be made because of an

8

accident or malpractice, including but not limited to other insurances. Any auto or recreational vehicle insurance coverage or benefits, including but not limited to uninsured/underinsured motorist coverage." Further, the Plan language states: "These rights apply regardless of whether such payments are designated as payment for, but not limited to: Pain and suffering, or medical benefits. This applies regardless of whether you or your dependents have been fully compensated for injuries." (Doc. 1, E. A).

In *Waller*, the Eighth Circuit found that the plan language that provided the plan, "shall be subrogated to all rights of recovery which you or your dependent . . . may have against any person or organization" was sufficient to preclude application of the make whole doctrine. *Id* at 140. The Court concluded that language implied the plan had a "first priority" claim as to any recovery. *Id.* The Court also recognized that ERISA plans differ greatly from general insurance company plans for which the made whole doctrine was created. *Id.*

In the current case, the Plan states, in the section entitled, "Information Regarding Rights of the Associates' Medical Plan and the Dental Plan," "The Plan has a right to . . . [r]ecover or subrogate 100% of the benefits paid . . . The Plan has first priority with respect to its right to reduction, reimbursement and subrogation. This applies regardless of whether you [the plan member] or your dependents have been fully compensated for injuries." The Plan language, like the language in *Waller*, entitles the Plan to first priority in recovery from a settlement. Further, the Plan expressly states its rights apply "regardless of whether you [the plan member] or your dependents have been fully compensated." The provision relied upon by Defendants unambiguously gives first priority to the Plan to reimbursement and subrogation from settlement proceeds and disclaims the made whole doctrine.

C. Possession and Control of the Funds

Plaintiffs argue they have not had possession and control of the funds in question as the funds have been held in their attorney's trust account. They argue their attorney is not a party to this action and has not agreed to or been ordered by this Court to hold the funds in his account on behalf of the Defendants. Plaintiffs also argue Defendants are not entitled to the full $50,000.00 as $17,000.00 of it belongs to Plaintiffs' attorney as his fee from the settlement. In support of their argument, Plaintiffs cite *Administrative Committee of the Walmart Associates' Health & Welfare Plan v. Willard*, 393 F.3d 1119 (10th Cir. 2004) and *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544 (7th Cir. 2003).

In *Primax*, the settlement check was made out to the plan member, the attorney and Primax, the plan member's insurer. Primax refused to sign the check because the attorney claimed he was entitled to fees. The Seventh Circuit found that because the Plan member never had the funds in question, the suit by the plan was for monetary damages and not equitable relief, therefore the plan was not entitled to the money. *Primax* at 547-48.

*Willard* presented a unique situation because the injured beneficiary, an employee of Wal-Mart, was injured when a pharmacist also employed by Wal-Mart erroneously filled a prescription. The beneficiary was covered under the Wal-Mart Associates Health and Welfare Plan. Mr. Willard argued the Plan language was ambiguous because the Plan allows recovery of "any judgment" while the "Cooperation Required" section only discusses recovery "from another party." *Id.* at 1125. The Court found that the reference under the "Cooperation Required" heading only described a participant's obligation to cooperate, it did not define the source of payments subject to reimbursement. *Id.* The reimbursement provision, as the one in

the present matter, was very broad, allowing recovery from any and all judgments and settlements. The Tenth Circuit found Mr. Willard's argument to be without merit. *Id.*

In this case, the funds the Plan is seeking to recover belong to the Plaintiffs and are being held in the Plaintiffs' attorney's account for the Plaintiffs. The Plaintiffs have control over the funds and are thus, in constructive possession of the funds. Furthermore, as in *Bombardier*, the argument that Plaintiffs lack control over the $17,000.00 claimed by their attorney is unpersuasive. Plaintiffs had a pre-existing contractual obligation to the Plan to reimburse it for the full amount of any benefits paid on their behalf without a reduction for attorney's fees. That obligation precludes Plaintiffs from entering into an agreement with their lawyer to pay him from a fund they were not entitled to.

The Eighth Circuit addressed the issue of attorney's fees in *Waller, supra*. As in the current case, the Wallers entered into a fee arrangement with an attorney that entitled their attorney to one-third of any amount recovered. The district court concluded that under federal common law, the Plan should be assessed an attorney's fee for "creation of the settlement fund." *Id.* at 142. At issue on appeal was the amount the Plan was required to pay as an attorney's fee. In reaching their decision, the Eighth Circuit adopted the reasoning of the Third Circuit in *Ryan v. Federal Express Corp.*, 78 F.3d 123 (3rd Cir. 1996). The plan in issue in that case required beneficiaries to reimburse "100% of the amount of covered benefits paid" and specifically addressed the question of attorney's fees incurred by a beneficiary in recovering from a third party. *Id.* The beneficiary argued the plan should pay a pro rata share of the attorney fees. The Third Circuit rejected the argument and enforced the plan stating, "it would be inequitable to permit the Ryans to partake of the benefits of the Plan and then . . invoke common law principles

to establish a legal justification for their refusal to satisfy their end of the bargain." *Id*. at 142 citing *Ryan*, 78 F.3d at 127-28.

In *Waller*, the plan's subrogation clause contained no language regarding attorney's fees. The Eighth Circuit agreed with the district court and reduced the subrogation recovery by the amount of a reasonable attorney's fee. In the present matter, the Plan is not silent on the issue of attorney's fees. In the section titled "Information Regarding Rights of the Associates' Medical Plan and the Dental Plan" under the sub-heading "Right to Reduction, Reimbursement, and Subrogation" the Plan states, "the Plan is not responsible for the covered person's attorney fees, expenses or costs." (Doc. 1, Ex. A).

In *Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Scott*, 27 F.Supp.2d 1166 (W.D. Ark. 1980), this Court found, on language identical to the language in the Plan at issue, "the provision at issue gives the Plan the right of recovery to the 'extent of any and all' payments recovered from identified sources." It makes clear that the attempted designation of the payments for specified types of damages would not prevent the Plan's full recovery and specifies that the right exists regardless of whether or not the participant is made whole. A fair interpretation of this language would be that full reimbursement is required without reduction for attorney's fees or costs. There is nothing in the Plan that qualifies the right to reimbursement by the attorney's fees or costs, if any, expended or incurred, in obtaining recovery of amounts subject to that right. . . [W]here a plan is clear and unambiguous we cannot apply a common law rule of interpretation. Rather the straightforward language of the plan should be given its natural meaning." *Id*. at 1175.

This Court finds the Plan sufficiently disclaims the make whole doctrine and the common

12

fund rule. Under the clear and unambiguous language of the Plan it is entitled to full reimbursement of the benefits it paid to Plaintiffs as a result of Zackery Brown's accident without any reduction for attorney's fees or costs. This Court further finds Defendants are not entitled to deduct any amounts from the wages or salary of Loretta Cole to reimburse the Plan for any unpaid benefits.

**Conclusion**

Defendants have demonstrated that no genuine issues of material facts exist and they are entitled to summary judgment. This Court finds that Defendants' request for a constructive trust is appropriate equitable relief. Thus a constructive trust is imposed upon the proceeds of the settlements received by the Plaintiffs from State Farm Insurance Company and Shelter Insurance Company in the amount of $50,000.00. This Court further denies Plaintiffs' request for attorney's fees and costs.

For the reasons reflected above, Plaintiffs' Motion for Summary Judgment (Doc. 16) is DENIED as to Plaintiffs' assertion that Zackery Brown is entitled to the $50,000.00 settlement of his personal injury claim or any reduction for attorney's fees or costs. Plaintiffs' Motion is granted as to the request that Defendant be barred from withholding any monies from Loretta Cole's wages or salary. Plaintiffs' Motion to Dismiss Counter-Claim (Doc. 31) is also DENIED as it is a moot issue. Defendants' Motion for Summary Judgment (Doc. 11-1) is GRANTED. This Court finds Defendants are entitled to a declaratory judgment as to the full amount of the recovery in the amount of $50,000.00 with no reduction for attorney's fees and costs.

IT IS SO ORDERED THIS 16TH DAY OF AUGUST 2007.

*/s/ Robert T. Dawson*
Honorable Robert T. Dawson
United States District Judge